## STACKPOLE vs. HENNEN.

Eastern Dis.
Feb'ary 1826.

APPEAL from the court of the parish and city of New-Orleans.

PORTER, J. delivered the opinion of the court. This cause has called for great attention and reflexion on the part of the court, not from the magnitude of the matter in dispute in a pecuniary point of view, nor from its importance to either of the parties, but from the great interest the public, and the profession of the law have in a correct decision of the legal principles it involves.

It is an action brought against the defendant, for having, on the trial of a cause where he was of counsel, charged the plaintiff who was examined as a witness, with being guilty of perjury, and of having come there with an intention of perjuring himself. The petition alleges the words to have been spoken falsely and maliciously, and with the intention of injuring the plaintiff.

The answer, after a general denial, avers, that the words were used in reply to observations, or questions, put to the defendant by the judge of the court while the defendant was acting as attorney and counsel. That in this ca-

Counsel are responsible for speaking maliciously on the trial of a cause.

Counsel are not responsible for statements made by them, if they are pertinent to the cause, and instructed by their client to make them.

And if the client is present when the words are spoken, he will be presumed to have authorised them.

pacity he was authorised to speak them, be-
lieving as he then did, the case might justify
the words spoken, and that they were necessa-
ry in the defence.    That he was not actuated
by any malice against the plaintiff.

The cause was submitted to a jury in the
court of the first instance, who found a verdict
in favor of the plaintiff, and assessed his dama-
ges at $500.    No motion was made for a new
trial, and the court having rendered judgment
conformably to the finding of the jury: the de-
fendant appealed.

The effect which should be given to this ver-
dict in the appellate court has been much con-
troverted in the argument.    This tribunal it is
true is not like those courts of error at common
law, where questions of fact cannot be exami-
ned and finally decided on.    By the law orga-
nizing the supreme court of this state, the pow-
er is conferred on it to enquire into the cor-
rectness of the judgment below, both as it re-
lates to law and facts, and to reverse and af-
firm it as the case may be.    The conferring
this power, as counsel correctly argued, suppo-
sed on the part of those by whom it was grant-
ed, that it would be exercised, and we have
certainly no more authority for declining to

reverse a judgment where there is error in fact,
than we would have where the mistake pro-
ceeds from an improper application of the law<br>
But in the exercise of this power, it has been a
matter of great solicitude with the members of
this court, so to use it, as to carry into effect the
object the legislature had in view when they
conferred it. In their deliberations on this
matter, they have been deeply impressed with
the conviction, that with a few exceptions ari-
sing out of party violence, or prejudice; the
facts of a cause are in general better tried, and
more correctly understood the nearer the in-
vestigation is carried on to the parties: and
that at each remove from this vicinage, what is
gained in the ascent to a higher tribunal, in its
superior knowledge and freedom from extrane-
ous influence, is more than counterbalanced
in the intimate knowledge possessed by the
lower court, and above all by the jury, of the
character and conduct of the parties and wit-
nesses. Hence a rule has been established in
this tribunal and acted on for some years, not
to refuse reversing a judgment where there is
error in fact, but never to reverse it unless the
error is so manifest, that the verdict cannot be
accounted for by any of these presumptions of

Eastern Dist
Feb'ary 1828.

STACKPOLE
vs.
HENNEN.

greater advantages in the investigation to which we have just attended. This doctrine has received a more frequent application to cases where the truth depended on the weight to be attached to conflicting testimony, where fraud was at issue—or damages were to be assessed, than any others, because we have felt, that the species of knowledge which juries possess, is peculiarly adapted to aid the reaching a correct conclusion in causes of this description: and that every difference of opinion on our part, would not authorise a reversal, when that difference perhaps proceeded from wanting the advantages in the investigation the lower tribunal enjoyed.

But even in cases such as those stated, if matters of law are presented on the record which notwithstanding the evidence, shews the judgment to be erroneous; the verdict of the jury presents no obstacle to the reversal. The influence given to the finding, necessarily yields to the superior control which the law exercises over the case, when the conclusion drawn from the facts is contrary to that which the law sanctions.

With this explanation of the power we possess, and the principles which govern us in the

Eastern Dist.
Feb'ary 1828.

STACKPOLE
vs.
HENNEN.

exercise of it, we proceed to state; that it appears from the evidence given on the trial below, that the defendant on cross examining the plaintiff who was a witness in the case of *Millar* vs. *Morgan*, was asked by the judge what object he had in view in putting certain questions. His answer was, I wish to shew *the witness is perjured, and that he came here to perjure himself.* There is some contradiction in the testimony as to the answer of the plaintiff, which elicited these remarks from the defendant. But taking it in the most favourable point of view for the latter, we think the observation was rash and unnecessarily severe. The error of the witness was evidently unintentional, and a question by way of explanation would have enabled him to correct the mistake. It is now admitted on the record, that the plaintiff is a man of truth and fair character. It also appears the plaintiff was an entire stranger to the defendant at the time the words were spoken.

The question of law is one of considerable difficulty, and our jusisprudence and laws are by no means so full and explicit on the subject as could be desired. In Rome, while a generous freedom was inculcated on counsel in advocating the causes of their clients, the prohi-

bition was express against profiting by this liberty, to speak untruths and utter slander. Spain in her written laws, has repeated nearly verbatim the restraints imposed by the imperial code. But we find nothing in either the one or the other system which enables us to ascertain the extent to which counsel might carry their observations; what were the presumptions attached to their acts, or how far they were protected by them when called to answer for an alleged violation of the rights of others. The prohibition, however, contained in these codes, establishes very clearly the existence of certain limits which could not be passed; a prohibition which we may remark must be supposed to exist in every civilized, and more particularly in every free country, independent of positive authority. The proposition, that any class of men under the pretence of aiding in the administration of justice, could say what thay pleased of every individual who was a witness or a party, without incurring responsibility, is too revolting to require refutation. Equally unfounded do we consider a ground assumed in the defence of the present case, that counsel is not responsible even for speaking maliciously, if the matter was spoken during the trial, and relative to the cause in hand.

EasternDist.
Feb'ary 1828.

STACKPOLE
vs.
HENNEN.

It can never be a correct discharge of duty to clients to act maliciously to others. The privileges which counsel enjoy, are given for the benefit of society, and not to enable them to indulge angry passions with impunity.

It is difficult to draw the line in such a manner as that, on one side will be found the rights of parties to have every thing pertinent in defence of their cause told;—motives arraigned;—conduct scrutinized, and that freedom of discussion which is so necessary to the discovery of truth:—and on the other side, that protection from calumny and unfounded invective, which honest men have a right to expect, while standing before a court of justice as witnesses or parties. The best rule is, we think, to protect counsel for every thing they say which is pertinent to the cause, if they are instructed by their clients to say it; and to hold them responsible for every thing that is impertinent to the case, whether they are instructed or not. The last part of this rule is obviously just. The great latitude which the law allows in discussion, has for its object the discovery of truth in the matters at issue, and that object can never be promoted by invective foreign to the subject under examination. The first part of the

rule we think equally sustainable on principles of utility. The protection accorded by it, does not place suitors and witnesses at the mercy of their adversaries and counsel. It only fixes the responsibility on the client instead of the advocate. Counsel are bound to believe the information communicated to them by those whose interests they advocate. Parties have a right to present their case through their agents to the tribunal that tries it in such manner as to them may seem meet; and it would be a great impediment to the free and efficient administration of justice, if the attorney was obliged to make every statement the cause might require on his own responsibility. It is no doubt desirable that investigations in courts should be conducted with all the circumspection and delicacy which characterize the intercourse of social life. But this in too many instances would be inconsistent with the rigorous obligations imposed on those who administer justice. A great deal of litigation is produced by the knavery of men; hence the necessity of free and bold examination; vice frequently requires to be stripped of the mantle in which hypocrisy and cunning envelope it, and laid open to the animadversion of justice, and

the indignation of mankind. But these impor-
tant objects could not be accomplished, if the
ministers whom the law authorises parties to
employ, were not protected in the discharge of
their duty. In England the privileges of coun-
sel extend as far as the rule just recognized
will permit them to go in this country. In
France the same limits are assigned, with this
sole difference, that there, by positive legislation
of a very recent date, the instructions must be
in writing. *Blackstone's com. vol.* 3, 29.
*Martin's Rep. de jures, vol.* 1, *p.* 464.

The jury in the case before us, have found a
verdict against the defendant, and it must be
enforced unless the law which governs the case
shews their finding to have been contrary to the
conclusions which it authorises on the evidence
adduced on the trial.

The defendant contends it does, because
the words spoken by him were pertinent to the
cause in hand; and being so, must, in the ab-
sence of proof to the contrary, be presumed to
have been spoken under instructions from his
client.

On the first branch of this subject, it has
been contended by the counsel for the plaintiff,
that the finding of the jury has established, the

words spoken were not pertinent to the case, and that the court is concluded by the verdict. To this position we can by no means assent. The relevancy of observations made in the progress of a cause is a matter of law not of fact. The words spoken were in answer to a question by the judge. They were pertinent therefore as to time: so they were as to matter, for it can never be impertinent to a case to shew that one of the witnesses brought in to establish the adversary's case is perjured.

On the second branch, the defendant has relied on the presumption that counsellors at law acting as the agents of others, must be supposed to follow the instructions they have received, and he has quoted a case of ancient date from the English books, where it was decided, that if an advocate should speak slanderous words, it would be intended he spoke according to his instructions. 6 *Bac. ab.* 225, *Styles Rep.* 462

It is somewhat difficult to say whether such be still the rule in that country. The elementary writers are silent respecting it, and the late decision on this subject by the court of King's Bench, does not directly decide the point, tho' the reasoning of some of the judges would induce us to presume, they thought the doctrine

Eastern Dist.
*Feb'ary* 1828.

STACKPOLE
*vs.*
HENNEN.

correct, for they seemed to think it necessary express malice should be shewn. *Black. Com. vol. 3, 29. Starkie on slander, 207.1 Barnwall* vs *Alderson, 232.*

However the rule may be in cases where the client is not present when the words complained of are spoken, we think such is the presumption of our law when as in the present instance ..e attended on the trial of the case, was present when the slanderous words were uttered, and did not disavow them. Nay more, that under such circumstances, the client is responsible whether the injury inflicted was the result of previous instruction or not. This principle can be traced to the fountain head of our jurisprudence, and its correctness is recognized by one of the most modern and eminent writers of a country whose laws have the same source as our own. There is a formal text of the Roman code, which declares, that the allegations made by lawyers in the presence of those they are acting for, are considered as if made by the parties themselves. The 8 law of the 6 title, of the third Partidas is still more positive, and states, "*ca toda cosa que el abogado dixere in juicio, estando delante aquel a quien pertenece el pleyto, si lo non contra-*

STACKPOLE
*vs.*
HENNEN.

*dixesse, entendiola tanto vale, è asi deve ser cabida como si la dizesse por su boca misma el senor del pleyto."*   Merlin in his *reper-toire de jurisprudence* in treating of the responsibility of counsel for slanderous words, observes, "*Lorsqu'un avocat sort de lui meme des bornes que lui sont prescrites, il peut etre desavoue. Mais il faut que ce desaveu se forme verbalment sur le champ par la partie, ou par le procureur qui sont censes presens a l'audience sans quoi il est presume n'avoir rien avance que de leur aveu.*   Merlin's rep de juris, vol. 1 p. 464. Code Liv. 2, tit. 10, L. 1 & 3.*

With these laws and principles controlling and guiding us, we cannot refuse to the defendant the benefit of the presumption he invokes. We think it clearly results from them in the first place, that the advocate is presumed to have spoken after the instructions of his client, because his client by his silence gives his assent to what has been said, and second, that the latter is responsible whether he has so instructed him or not, because he makes the injury his own by ratifying what his agent does. Nor can we dismiss the case without stating at the same time our entire approbation of the

wisdom and utility of such a rule. Where ex-
press malice is not shewn on the part of the at-
torney, it can hardly be supposed he is actua-
ted by motives other than those of advancing
the interests of his clients. If the latter who is
to be benefitted by these observations, stands
by and acquiesces in them, and is willing to
take all the advantages, which the zeal and
warmth of his advocate whether justifiable or
not, can bestow, it is but strict justice he should
be equally responsible for the injury. *Qui sen-*
*tit commodum, debet sentire et onus.*

It is therefore ordered, adjudged and de-
creed that the judgment of the parish court
be annulled, avoided, and reversed; and it is
further ordered, adjudged and decreed, that
there be judgment against the plaintiff as in
case of nonsuit, with costs in both cases.

*Livermore* for the plaintiff, *Mazereau* for
the defendant.